## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**STEVEN E. GREER,**

               **Plaintiff,**        :

                                        **Case No. 2:24-cv-1237**

    **v.**                                 **Chief Judge Sarah D. Morrison**

                                        **Magistrate Judge Chelsey M. Vascura**

**SUSAN HARRELD,** *et al.*,        :

               **Defendants.**

## <u>OPINION AND ORDER</u>

Plaintiff Steven E. Greer filed this suit alleging (among other things) that his estranged siblings, their spouses, and their attorneys defamed him and stole his belongings. This matter is before the Court on several motions, including the Defendants' Motion to Strike and their Motion to Dismiss the Amended Complaint. (ECF Nos. 17 and 36.)

## I.  FIRST SUIT FILED BY STEVEN IN THE SOUTHERN DISTRICT OF OHIO

In September 2022, Steven filed a lawsuit against Susan and Mike Harreld (his sister and brother-in-law); Cynthia Hall (his sister); and Edward and Sarah Greer (his brother and sister-in-law). (Case No. 2:22-cv-3443-SDM-CMV, hereinafter "*Greer I*"). During his prosecution of that case, Steven twice amended his complaint and sought to amend his complaint a third time, in addition to filing several meritless motions.

Steven's behavior in *Greer I* led the Court to order him to refrain from contacting the defendants and from making disparaging personal remarks towards opposing counsel. He voluntarily dismissed that suit in April 2023.

## II.     PROCEDURAL BACKGROUND IN THE SECOND SUIT

Less than a year later after dismissing *Greer I*, Steven filed this suit against the same defendants from that case and added as defendants Robert Dunn (Martha, Susan and Mike's estate planning attorney), and Christopher Tackett (defendants' attorney in *Greer I*).[1] In an effort to avoid having his case assigned to the undersigned, Steven filed his second suit in the Western Division of this Court. (Case No. 1:24-cv-118-MWM-SKB). Upon review, the Court determined that his case was improperly filed in the Western Division, so the case was transferred to the Eastern Division. In so transferring, the Court ordered Steven to file an amended complaint "that fully complies with Federal Rule of Civil Procedure 8, that eliminates redundant, immaterial, impertinent or scandalous matter." (ECF No. 4.)

Steven filed his Amended Complaint (Am. Compl., ECF No. 10) and Defendants responded with a Motion to Strike the Amended Complaint and, later, a Motion to Dismiss. (ECF Nos. 17 and 36.)

## III.    MOTION TO STRIKE

Steven did not comply with the Court's Order in filing his Amended Complaint. His Amended Complaint kept all of the irrelevant background

---

[1] Steven also named Martha Greer, Nickolas McCoy, and David Ison as defendants in *Greer II*, but has since voluntarily dismissed them. (*See* ECF Nos. 33, 40, and 41.)

2

contentions and scandalous allegations about his siblings and their spouses that were in the original Complaint. (Am. Compl.) He accuses his siblings of mental illness and murdering their father. (*Id.*) Steven alleges that Mike and Susan were "charged by the IRS for tax evasion" and they sold their home to raise money. (*Id.*, at Page ID #332, fn 11.) While these are some of his more extreme allegations, he also calls Mike a "white-collar serial con-artist." (Am. Compl. Exh. 24, at PageID #536) and suggests that Bryan has a "schizotypal personality." (*Id.*, at PageID #541.) Not only did Steven leave gossip and insults in his Amended Complaint, he copied and pasted his lengthy diatribes into his so-called "Appendix to Amended Complaint." (Am. Compl. Exh. 24.) Steven's Amended Complaint also fails to comply with the Federal Rules of Civil Procedure in that he has not made a "short and plain statement."

Nevertheless, motions to strike are disfavored in the Sixth Circuit. And the Court prefers to decide cases on their merits, such as on Defendants' Motion to Dismiss. So Defendants' Motion to Strike the Amended Complaint (ECF No. 17) is **DENIED**.

## IV.    FACTUAL BACKGROUND

Steven's well-pled factual allegations in the Amended Complaint are considered true for purposes of the pending Motion to Dismiss. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Steven was estranged from his siblings prior to the events forming the basis of this action. (Am. Compl., at PageID #330.) He claims that his siblings and their spouses set out on a multi-year plan to take advantage of his elderly parents by

effectively leaving his father Thomas Greer to die in a nursing home and manipulating his mother Martha Greer to hand over the family's assets. (*Id*.)

On January 24, 2022, Susan and Mike were cleaning out Tom and Martha's home in Delaware, Ohio (the "Greer home") when they argued with Tom. (Am. Compl., at PageID #339-340.) Mike pushed Tom, and then the couple left with Martha to go to Bryan and Sarah's home in New Albany, Ohio. (*Id*.) Susan and Cynthia called Steven to tell him what had occurred, and to ask for his help with taking care of Tom; Tom was suffering from dementia and Martha had been his primary caregiver. (*Id*.) Susan informed Steven that she planned to take control of Martha's finances. (*Id*.) Steven claims that his relationship with his mother has suffered because she has been under Susan and Mike's control since this time. (Am. Compl., at PageID #344-345).

In early February 2022, Steven drove from Texas to Ohio to "save his father." (*Id*.) At that time, Steven emailed Attorney Dunn saying that he was forced to become Tom's caregiver, and that he would be charging Susan for his services. (*Id*., at PageID #348.) Despite the fact that neither Attorney Dunn nor Susan responded to his email, Steven emailed Susan invoices allegedly charging her $500 per hour for grocery shopping, landscaping and home maintenance at the Greer home. (Am. Compl. Exh. 23, ECF No. 10-23.) Steven cared for his father for several months and now claims he is owed approximately one million dollars for those services. (Am. Compl., at PageID #428). He also got a financial and health care power of attorney

for Tom, and used that status to seek financial relief, medical care, and nursing home care for his father. (*see generally Id.*)

When Steven visited the Greer home on June 18, 2022, Susan and Mike were there and he got into a shouting match with them. (Am. Compl. Exh. 24, at PageID #570.) The Delaware County Sherriff's Office was called and both Steven and Mike were given warnings for their conduct. (*Id.*)

That same month, the Delaware County Probate Court appointed Martha as Tom's guardian; she later became the sole person with power of attorney ("POA") for Tom. (Am. Compl., at PageID #382.) Tom was then readmitted into Avalon (a nursing home), where he remained until his death in October 2023. (*Id.*) Avalon prevented Steven from visiting his father. (*Id.* at PageID #412.) When Tom died, Steven was not informed about his father's death or the funeral arrangements. (*Id.* at PageID #424.)

Based on these allegations, Steven asserts the following claims for relief: Defamation; False Light Invasion of Privacy; Breach of Contract; Unjust Enrichment; Loss of Consortium; Assault; Battery; Theft; and Civil Conspiracy. (*Id.* at PageID #322.)

## V.  MOTION TO DISMISS

Defendants' Motion seeks dismissal of the Amended Complaint on several grounds. Mr. Dunn and Mr. Tackett (the "Attorney Defendants") seek dismissal under Federal Rule 12(b)(5) for insufficient service of process. And all of the Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Court's Local Rules require that any memorandum in opposition to a motion be filed within twenty-one days after the date of service of the motion. Loc.R. 7.2(a)(2). Steven's only response to Defendants' Motion to Dismiss was a Motion to Strike. (ECF No. 37.) However, the Federal Rules of Civil Procedure provide that the purpose of a motion to strike is to strike pleadings. *See* Fed. R. Civ. P. 12(f); *see also Dawson v. Kent*, 682 F. Supp. 920, 922 (N.D. Ohio 1988), aff'd, 865 F.2d 257 (6th Cir. 1988) ("[t]he federal rules make only one reference to a motion to strike in Rule 12(f). This rule relates only to pleadings and is inapplicable to other filings."). The only documents that qualify as "pleadings" are set forth in Fed. R. Civ. P. 7(a) (e.g., complaint, answer, crossclaim, etc.). Accordingly, the Court interprets Steven's filing as his memorandum contra to the Motion to Dismiss.[2]

## A.     Rule 12(b)(5) – Insufficient Service of Process

A plaintiff is responsible for serving a summons and his complaint within 90 days of filing the complaint. Fed. R. Civ. P. 4(m). Without such service, a district court is without jurisdiction to render judgment against a defendant. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). "Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

---

[2] Pro se litigants are expected to follow the rules of this Court. *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991)("[w]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues..., there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.")

An individual defendant can be served by "delivering a copy of the summons and complaint to the individual personally; leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; delivering a copy of each to an agent authorized by appointment or law to receive service of process;" or otherwise in accordance with Ohio law. Fed. R. Civ. P. 4(e)(2)(A-C). When a plaintiff attempts to serve a defendant by delivering the summons and complaint to an agent of an individual defendant's employer, the service fails to comply with Federal Rule of Civil Procedure 4. *See, e.g.*, *Abel v. Harp*, 122 F. App'x 248, 251 (6th Cir. 2005) (citation omitted).

Steven failed to serve the Attorney Defendants. The returns of executed summons for both of the Attorney Defendants were filed on the docket and indicate that service was accepted by Becky Hartmon, who works for the Attorney Defendants' law firm. (ECF Nos. 25 and 26.) There is no evidence that Ms. Hartmon is an authorized agent for either of the Attorney Defendants, nor is there evidence of any other means of service on these Defendants.

Accordingly, the Attorney Defendants are **DISMISSED.**

### B.     **Rule 12(b)(6) – Failure to State a Claim**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a)

standard may be dismissed if it fails to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations

omitted). The complaint need not contain detailed factual allegations, but it must

include more than labels, conclusions, and formulaic recitations of the elements of a

cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555).

In ruling on a 12(b)(6) motion, a court "may consider the Complaint and any

exhibits attached thereto, public records, items appearing in the record of the case

and exhibits attached to defendant's motion to dismiss so long as they are referred

to in the Complaint and are central to the claims contained therein." *Bassett v.

NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). "The court is not required to favor the

plaintiff's allegations when they are entirely contradicted by video evidence."

*Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *3 (6th Cir. Aug. 18,

2022) (citing *Bailey v. City of Ann Arbor,* 860 F.3d 382, 386, 860 F.3d at 386-87 (6th Cir. 2017).

These standards apply equally when the plaintiff is *pro se*. Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### 1.    Count I: Defamation Per Se

Under Ohio law, a plaintiff must prove the following the elements to succeed on a defamation claim: "(1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement." *Green v. Mason*, 504 F. Supp. 3d 813, 830 (S.D. Ohio 2020) (Cole, J.) (citing *Fisher v. Ahmed*, 153 N.E.3d 612, 624 (Ohio Ct. App. 2020)).

Defamation per se is a statement that is defamatory on its face. *Id.* Defamation per se is limited to statements that "fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule or contempt." (*Id.* at 833) (citing *McClure v. Ohio Dep't of Rehab. & Corr.*, No. 19-535, 2020 WL 1320713, at *2 (Ohio Ct. App. Mar. 19, 2020))

9

Courts determine whether a statement is a false statement of fact, as opposed to an opinion, by considering the totality of circumstances. Some factors in the Court's analysis are: the specific language used, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. *Carr v. Educ. Theatre Ass'n*, 215 N.E.3d 584, 591 (Ohio Ct. App. 2023). There is a high standard for finding a false statement of fact, otherwise "every slight or offensive remark [may] be rendered actionable." *Id*. Potentially defamatory statements published in a heated dispute where the third-party likely anticipates "fiery rhetoric" leans in favor of an opinion rather than a false statement of fact. *Maddox Def., Inc. v. GeoData Sys. Mgmt.*, No. 107559, 2019 WL 2051806, at *1225 (Ohio Ct. App. May 9, 2019).

Steven identifies twenty alleged defamatory statements,[3] but he fails to plausibly plead any facts that support a claim of defamation against the remaining Defendants.

### a) Defamatory Statement 1

Defamatory Statement 1 alleges Susan, Mike, and Attorney Dunn stated that Steven is not going to be appointed fiduciary and he was "not psychologically fit." However, there are no factual allegations in the Amended Complaint attributing these statements to Susan or Mike. Rather, Steven alleges that these statements were made by Attorney Dunn to Chris Huddleston (Tom and Steven's lawyer). (Am.

---

[3] The Court adopts the Amended Complaint's numbered defamatory statements 1-20 when addressing the specific statements. (Am. Compl., at PageID #406-415.)

Compl. Exh. 3, ECF No. 10-3, at PageID #472-473.) As discussed above, the claims against Attorney Dunn are dismissed.

### b) Defamatory Statements 2, 4, 6, 7, 9, 11, 12, 13, 14, 15, and 16

Defamatory Statements 2, 4, 6, 7, 9, 11, 12, 13, 14, 15, and 16 allege, in part,[4] that Susan, Cynthia, Mike, Sarah, and Bryan made false statements to police, social workers, nursing home staff, and hospital staff. Accusations of criminal activity can be defamatory. However, an otherwise defamatory statement is subject to a qualified privileged when it is "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest." *Allen v. Pirozzoli*, No. 103632, 2016 WL 1600344, at *3 (Ohio Ct. App. April 21, 2016); *see also Green,* 504 F. Supp. 3d at 830 (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (Ohio 1975)).

Qualified privilege is an affirmative defense, *Reddy v. JPMorgan Chase Bank, N.A.,* No. 9-1152, 2011 WL 1641261, at *3 (S.D. Ohio May 2, 2011) (Smith, J.) (citation omitted), but the Court can consider it on a motion to dismiss if the complaint "contains facts which satisfy the elements of the defendant's affirmative defense." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir.

---

[4] Steven also alleges in Defamatory Statements. 9, 13, and 16 that Mike, Susan, Cynthia, Sarah, and Bryan told hospital staff, social workers, and police officers that Steven has a mental illness. The Court will examine that part of Defamatory Statements 9, 13, and 16 in subsection f.

2013). In fact, the federal pleading standards require a plaintiff alleging defamation where a qualified privilege applies to plead facts establishing actual malice. *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1092 (S.D. Ohio 2021) (Cole, J.) (citing *Carovac v. Lake Cnty. Bd. of Dev.'l Disabilities/Deepwood*, No. 19-2344, 2020 WL 5423966, at *5 (N.D. Ohio Sept. 9, 2020)). Actual malice requires that the speaker had "knowledge of a statement's falsity or reckless disregard of its falsity." *Id*.

Reading Steven's allegations in the light most favorable to him, Susan, Mike, Cynthia, Sarah, and Bryan's statements fall within a qualified privilege. First, Ohio law is well-settled that statements by private citizens to law enforcement for the prevention or detection of crime are qualifiedly privileged unless the speaker acted with actual malice. *Thomas v. Murry*, No. 109287, 2021 WL 303822, at *11 (Ohio Ct. App. Jan. 28, 2021). The alleged defamatory statements made to social workers are also entitled to qualified privilege because of the common shared interest between these Defendants and Delaware Adult Protective Services ("APS") to prevent or stop elder abuse and the APS social workers are able to advise or assist in addressing any abuse. *See, e.g., Green,* 504 F. Supp. 3d at 830 (holding that a qualified privilege applies where the publisher has a shared interest with the party that heard the statement at issue.). And statements to Tom's hospital and nursing home staff about who has his POA was vital to his medical care because his health care teams needed to know who had the valid POA for Tom. *See Mawaldi v. St. Elizabeth Health Ctr.*, 381 F. Supp. 2d 675, 689-690 (N.D. Ohio 2005) (A qualified

privilege applies to a publication made in the interest of health care concerns for patients.)

So the Court next considers whether Steven has plausibly pled actual malice on the part of Susan, Cynthia, Mike, Sarah, or Bryan. He has not. Steven has made only conclusory allegations of his siblings and in-laws' ill-will towards him. Although Steven alleges that these Defendants acted with knowledge that their statements were false or with reckless disregard of their statements' falsity, "[t]his Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations." *Molnarova v. Swamp Witches Inc. LLC*, No. 23-2157, 2024 U.S. Dist. LEXIS 166382, *6 (S.D. Ohio Sept. 16, 2024) (Marbley, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Rather, the context alleged by Steven makes clear that the challenged statements were not defamatory.

### c) Defamatory Statement 3

In Defamatory Statement 3, Steven alleges that Cynthia, Sarah, Susan, and Bryan told hospital staff and police officers that he was not a real doctor. This is a non-actionable opinion. As Defendants argue in the Motion, the emphasis on "real" doctor suggests that Cynthia, Sarah, Susan, and Bryan's statements are figurative opinions. For example, Bryan told police officers that Steven went to medical school but then went on to work in the financial sector. (Am. Compl. Exh. 1, ECF No. 10-1, at Page ID #451.) Similarly, Cindy informed hospital staff that Steven was not Tom's doctor and challenged Steven's POA for Tom. (Am. Compl., at PageID #352.*)*

In context, these statements demonstrate a disagreement over Steven's involvement with Tom's care and how they viewed his medical practice in light of his career in the financial sector. The statements are non-actionable figurative and hyperbolic statements.

### d)  Defamatory Statement 5

Defamatory Statement 5 is not a false statement of fact. On March 9, 2022, Mike emailed Steven, and others, stating, "We have provided attorneys with enough information on you that you wouldn't qualify for guardianship for a dog." (*Id.*, at PageID #353.) In the context of the ongoing arguments regarding Tom's care, Mike's statement is his opinion of Steven's qualifications for guardianship.

### e)  Defamatory Statement 8

For Defamatory Statement 8, Steven alleges that Mike and Susan told a Fifth Third Bank employee that Steven did not have a valid POA over Tom. In an email that Steven provides to support his allegation, Allyson Greenwald (a local branch manager at Fifth Third Bank) informed Steven that the bank had put a hold on Tom's account because of a question as to whether Martha or Steven held the valid POA. Ms. Greenwald did not identify Mike or Susan as the source of her concern. Thus, Steven has failed to identify what statement was made by Mike or Susan, when it was made, and to whom.

To the extent that Steven alleges that Mike admitted to making defamatory statements regarding Steven's POA in a June 2022 email, telling Steven, "[y]our POAs are all now useless," is not defamatory.

### f) Defamatory Statements 9, 13, and 16

Defamatory Statements 9, 13, and 16 allege, in part, that Susan, Mike, Sarah, Bryan, and Cynthia informed law enforcement, medical staff, and nursing home staff that Steven was mentally unstable. Ohio courts have long held that calling an individual "crazy" or "mentally unstable," falls into the category of an opinion. *Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, 146 Ohio App.3d 103, 110 (Ohio Ct. App. 2001) ("A statement that someone is "crazy" is an expression of opinion that generally does not subject one to liability."). "[P]eople frequently use adjectives such as 'stupid' or 'crazy' to express their feelings or opinions about an individual." *Paige v. Youngstown Bd. of Edn.*, No. 93-212, 1994 WL 718839, *4 (Ohio Ct. App. Dec. 23, 1994). These statements do not support Steven's defamation per se claim.

### g) Defamatory Statements 10 and 18

In Defamatory Statements 10 and 18, Steven alleges that staff at University Hospital at Parma and Avalon published defamatory statements about him. Steven has not named any staff members from either institution as defendants.

### h) Defamatory Statement 17

Steven alleges Defamatory Statement 17 was made by Mr. McCoy, but he was voluntarily dismissed from the case.

### i) Defamatory Statements 19 and 20

For Defamatory Statements 19 and 20, Steven alleges that "Defendants" published defamatory statements to funeral home staff and his aunt Lucretia Pak. However, he fails to identify what was said, who said it, and to whom.

Steven's defamation claim is **DISMISSED**.

### 2.     Count II: False Light Invasion of Privacy

A defendant is liable for the tort of false-light invasion of privacy when he publicizes a matter concerning another person that places that person before the public in a false light. *Green*, 504 F. Supp. 3d at 835-836. To be actionable, the invasion of privacy must be "highly offensive to a reasonable person" and the actor must have knowledge of, or act in reckless disregard as to, the falsity of the publicized matter. *Carter v. Nat'l City Bank*, No. 17-508, 2018 WL 3543699, *24-25 (S.D. Ohio July 23, 2018) (Litkovitz, J.). For a false light claim, "the information must be 'publicized,' which is different from 'published.'" *Mitchell*, 518 F. Supp. 3d at 1098 (quoting *Welling v. Weinfeld*, 113 Ohio St.3d 464, 473 (Ohio 2007)). "Publicity ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*

Steven does not allege what false information forms the basis of his false light invasion of privacy claim or which defendant publicized such false information. Even if the Court were to consider Steven's alleged twenty defamatory statements in the context of this claim, the Court has already addressed that they are not demonstrably false. Moreover, Steven has not alleged that any of those statements were communicated to the public at large. Steven's false light invasion of privacy claim is **DISMISSED**.

### 3.     Count III: Breach of Contract

There are three types of contracts recognized under Ohio law: express, implied in fact, and implied in law. *Union Sav. Bank v. Lawyers Title Ins. Corp.*,

16

191 Ohio App.3d 540, 547 (Ohio Ct. App 2010). For a breach of contract claim, a plaintiff must show: "(1) a contract existed; (2) the plaintiff performed his obligations under the contract; (3) the defendant breached the contract; and (4) plaintiff suffered damages or loss due to the breach." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (Ohio Ct. App. 2007).

Steven alleges that Susan breached a contract for his provision of caregiving services to Tom. But he fails to allege the existence of a contract. There are no allegations that Steven and Susan had an express contract for payment of services rendered to their father.

Nor has Steven alleged a contract implied in law or fact. Although Steven alleges that Susan and Cynthia asked for his help with taking care of Tom, he does not allege that there was any understanding that Susan would pay him for his help. Under similar circumstances, Ohio courts have held that, if the plaintiff is a member of the family to whom services were rendered, there is a presumption that the services are gratuitously rendered. *See In re Estate of Bohl,* 60 N.E.3d 511, 524 (Ohio Ct. App. 2016); *see also Merrick v. Ditzler,* 91 Ohio St. 256, 263 (Ohio 1915). Steven's email to Attorney Dunn saying that he planned to invoice Susan for his services does not overcome the presumption that his services to his father were gratuitously rendered. Rather, Steven has alleged only that he made a unilateral demand to which Susan never agreed. The breach of contract claim is **DISMISSED**.

### 4.      Count IV: Unjust Enrichment

The elements of an unjust enrichment claim are: 1) the plaintiff has conferred a benefit upon the defendant, 2) the defendant is aware of the benefit, and 3) the defendant has retained the benefit under circumstances where it is unjust to do so without payment. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). "It is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit." *United States Health Practices v. Blake,* No. 00-1002, 2001 WL 277291, at *2 (Ohio Ct. App. Mar. 22, 2001) (citing *Katz v. Banning*, 617 N.E.2d 729, 84 Ohio App.3d 543, 552 (Ohio 1992) (quoting *City of Cincinnati v. Fox,* 49 N.E.2d 69, 71 Ohio App. 233, 239 (Ohio 1943)).

This claim is brought against Susan and Mike, but Steven has not alleged sufficient facts to support his claim. Specifically, even though Steven alleges Susan and Mike needed his help with caring for Tom, he fails to allege facts that would show his services were a benefit to Susan and Mike.

Steven also fails to allege that Susan and Mike retained any benefit that, under the circumstances, it would be unjust for them to keep without payment. As discussed in the previous section, there is a presumption that a family member is providing services gratuitously. *See Merrick,* 91 Ohio St. at *263. In fact, Steven alleges that Susan and Mike told him to stop providing services and that he would not be paid for any services rendered. (*see, e.g.*, Am. Compl., at PageID #353; Exh. 10, ECF No. 10-8.) The unjust enrichment claim is **DISMISSED.**

18

### 5. Count V: Loss of Consortium

Ohio recognizes a loss of consortium claim for the loss of a parent. "The essence of a parental-consortium claim is that a child is compensated for a harm done or for losses suffered as a result of injury to the parent and to the parent-child relationship." *Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380, 382 (Ohio 2001). Loss of consortium is a derivative claim, meaning that it is dependent on the defendant committing a legally cognizable tort upon the parent of the child-claimant. *Mota v. Gruszczynski*, No. 10-731900, 2011 Ohio Misc. LEXIS 830, at *21 (Ohio C.P. June 27, 2011). If the parent's "underlying tort claim fails on the merits, the loss-of-consortium claim also must fail." *Id.*

Steven's parents are not a party to this case and there are no allegations that they have a tort claim against Defendants. Thus, the loss of consortium claim is **DISMISSED.**

### 6. Count VI & VII: Assault and Battery

Assault is the "intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact." *Hopkins v. Columbus Bd. of Educ.*, No. 7-700, 2008 Ohio App. LEXIS 1317, at *16-17 (Ohio Ct. App. Mar. 31, 2008). For a civil assault claim, "the alleged tortfeasor must know with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.* Battery requires "an actual harmful or offensive contact by another who intends to cause that harmful or offensive contact." *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016). "Contact which

is offensive to a reasonable sense of personal dignity is offensive contact." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (Ohio 1988).

Steven fails to plausibly allege facts that support his assault and battery claims against Mike – the allegations in the Amended Complaint are nothing more than a formulaic recitation of the elements of the claims.

The video link that Steven provides does not save his claims. Steven began filming himself when he was approaching the Greer Home, and continued filming when he saw Mike and Susan. The video shows Steven and Mike yelling at each other and accusing the other of trespassing. (Am. Compl. Exh. 24, at PageID #570, https://youtu.be/kaYyDn37uZ0.) Although Steven yells in the video "he assaulted me", the video only shows Mike walking toward Steven and telling him to leave the property – Mike did not verbally threaten Steven with harm, did not move aggressively or raise his hand or arm as if to strike Steven, and did not otherwise come into contact with Steven. For his part, Steven is seen walking towards Susan after Mike told him to stop and laughing throughout the video. The video does not support Steven's assertion that he was in a "reasonable apprehension of an imminent battery."

Steven's assault and battery claims are **DISMISSED**.

### 7.    **Count VIII: Theft**

In their Motion to Dismiss, Defendants fail to make any argument to support dismissing Steven's theft claim. This Court declines to make the Defendants' arguments for them. *See, e.g.*, *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006)

(holding that the defendant does not carry its burden under a Rule 12(b)(6) motion to dismiss where it "does not offer a single argument to supports [its] assertion that [the plaintiff] failed to state a claim.")

Defendants' Motion to Dismiss is **DENIED** as to Count VIII.

### 8.     Count IX: Civil Conspiracy

To establish a civil conspiracy, a plaintiff must prove: (1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself. *Kenty v. TransAmerican Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 1995 Ohio 61, 650 N.E.2d 863, *420 (Ohio 1995). A claim for civil conspiracy cannot be maintained unless an underlying unlawful act was committed. *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (Ohio Ct. App. 1996).

Steven alleges civil conspiracy based on Counts I-VIII of the Amended Complaint and on several other grounds, such as conspiracy to commit murder as well as violate a firearms law, mail fraud, and HIPAA. (Am. Compl., at PageID #436-440.) The Court is dismissing Counts I-VII and Steven cannot rely on meritless causes of action to support his conspiracy claim. However, to the extent that Steven's claim for civil theft survives, his civil conspiracy claim also survives.

Defendants' Motion to Dismiss is **DENIED** as to Count IX for Civil Conspiracy**.**

## VI.     OTHER MOTIONS

Steven's Cross Motion to Strike Defendants' Motion to Strike the Amended Complaint (ECF No. 23) and Motion for Reconsideration (ECF No. 32) are without merit and are **DENIED.**

## VII.  CONCLUSION

For the reasons stated above, Defendants' Motion to Strike the Amended Complaint (ECF No. 17) is **DENIED**.

Defendants' Motion to Dismiss (ECF No. 36) is **GRANTED** in part and Counts I-VII of the Amended Complaint are **DISMISSED**. The Motion to Dismiss is **DENIED** as to Counts VIII and IX.

All other pending motions are **DENIED.**

**IT IS SO ORDERED.**


/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**